IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2005 AUG 25 PM 3: 16

CALLAWAY GOLF COMPANY,

Plaintiff,

v.

DUNLOP SLAZENGER,

Defendant.

Civil Action No. 01-669 KAJ

**MEMORANDUM OPINION**

---

Jack B. Blumenfeld, Esq., Morris Nichols Arsht & Tunnell, 1201 N. Market Street, Wilmington, Delaware 19801; Counsel for Plaintiff.
Of Counsel: Robert E. Cooper, Esq., Gibson Dunn & Crutcher, 333 South Grand Ave., Los Angeles, California 90071
Jeffrey T. Thomas, Esq., Gibson Dunn & Crutcher, Jamboree Center, 4 Park Plaza, Suite 1400, Irvine, California 92614

Rick S. Miller, Esq., Ferry, Joseph & Pearce, P.A., 824 Market Street, Suite 904, P.O. Box 1351, Wilmington, Delaware 19899; Counsel for Defendant.
Of Counsel: John P. Kelly, Esq., Lorusso Loud & Kelly, LLP, 2601 East Oakland Park Boulevard, Suite 208, Northern Trust Plaza, Fort Lauderdale, Florida 33306
Richard M. Husband, Esq., Mark D. Lorusso, Esq., Lorusso Loud & Kelly, LLP, 15 Rye Street, Suite 312, Portsmouth, New Hampshire 03801
David P. Tulchin, Esq., Robin D. Fessel, Esq., Sullivan & Cromwell, LLP, 125 Broad Street, New York, New York, 10004

---

August 25, 2005
Wilmington, Delaware



**JORDAN, District Judge**

## I. Introduction

This case about false advertising and misappropriation of trade secrets relates to golf ball technology. It was tried to a jury and, on August 12, 2004, the jury returned a verdict for Callaway Golf Company ("Callaway"), awarding $2.2 million on Callaway's false advertising claim. (*See* Docket Item ["D.I."] 410.) The jury also found in favor of Callaway on the counterclaim filed by Dunlop Slazenger ("Dunlop") alleging misappropriation of trade secrets. (*Id.*) Presently before me are Dunlop's Motion for Judgment as a Matter of Law and/or for a New Trial pursuant to Rule 50 and 59 of the Federal Rules of Civil Procedure (D.I. 434), Dunlop's Motion for Attorney Fees and Costs (D.I. 438), and Callaway's Motion for Attorney Fees and Costs (D.I. 437). As set forth herein, Dunlop's Motion for Judgment as a Matter of Law is granted in part and denied in part. Both Dunlop's and Callaway's Motions for Attorneys Fees and Costs are denied.

## II. Background

Because the factual and procedural history of this case is set forth in several prior rulings, *see* Memorandum Opinion dated May 13, 2004 (D.I. 359), Memorandum Opinion dated May 18, 2004 (D.I. 362), Memorandum Order dated May 18, 2004 (D.I. 360), and Memorandum Order dated May 21, 2004 (D.I. 363), it will not be repeated here.

On August 17, 2004, judgment was entered in favor of Callaway for $2.2 million (D.I. 432), based on the August 12, 2004, jury verdict. (D.I. 410.) The jury specifically found that Dunlop had willfully and in bad faith engaged in literally false advertising by claiming that its A10 golf ball was "the Longest Ball on Tour." (*Id.* at 1, 2.) The jury awarded to Callaway $1.1 million for "corrective advertising" expenditures and another $1.1 million as damages for Dunlop's "unjust enrichment." (*Id.* at 2, 3.) The jury also found that Callaway had wrongly acquired Dunlop's trade secrets but that Callaway did not use that information. (*Id.* at 3.) Dunlop seeks to overturn the jury's verdict on the false advertising claim and demands a new trial on the trade secret counterclaims because of "erroneous pre-trial rulings." (D.I. 446 at 8.)

**III. Standard of Review**

A. Judgment as a Matter of Law

"Pursuant to Federal Rule of Civil Procedure 50, judgment as a matter of law may be granted only when 'there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Bullen v. Chaffinch*, 336 F. Supp. 2d, 342, 346 (D. Del. 2004) (quoting FED. R. CIV. P. 50(a)). In assessing the sufficiency of the evidence, the court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991). The court must determine "whether the record contains the minimum quantum of evidence from which a jury might reasonably afford relief." *Keith v. Truck*

*Stops Corp. of America*, 909 F.2d. 743, 745 (3d Cir. 1990) (quoting *Smollett v. Skating Dev. Corp.*, 793 F.2d 547, 548 (3d Cir. 1986) (internal quotation marks omitted)). "[A] court is not free to weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury." *Aloe Coal Co. v. Clark Equipment Co.,* 816 f.2d 110, 113 (3d Cir 1987). "The difference in views between court and the jury is an insufficient basis to enter judgment as a matter of law." *Boyce v. Edis Co.*, 224 F. Supp. 2d 814, 817 (D. Del. 2002).

B. New Trial

Federal Rule of Civil Procedure 59(a) provides, in pertinent part:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

The decision to grant or deny a new trial is within the sound discretion of the trial court and, unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner. *See Allied Chem. Corp. v. Darflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282 (3d Cir. 1993). Among the most common reasons for granting a new trial are: "(1) ... the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) ... newly-discovered evidence exists that would likely alter the outcome of the trial ... ; (3) ... improper conduct by an attorney or the court unfairly influenced the verdict; ... [and] (4) ... the jury's verdict was facially inconsistent." *Zarow-Smith v. N.J. Transit Rail Operations*, 953 F. Supp. 581, 584 (D.N.J. 1997) (citations omitted). The court should grant a new

trial on the basis that the verdict was against the weight of the evidence "only where a miscarriage of justice would result if the verdict were to stand." *See Williamson*, 926 F.2d at 1352; *EEOC v. Del. Dep't of Health and Soc. Servs.*, 865 F.2d 1408, 1413 (3d Cir. 1989).

## VI. Discussion

### A. Dunlop's Motion for Judgment as a Matter of Law or New Trial

#### 1. False Advertising Claim

Claims for false advertising in interstate commerce are authorized by section 43(a) of the Lanham Act ("the Act"), 15 U.S.C. §1125(a). The Act allows a claimant "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of the action." 15 U.S.C. §1117(a). Further, the Act "permits cumulative recovery of both profits and damages where the offending party's conduct is willful." *Novell, Inc. v. Network Trade Center, Inc.*, 25 F. Supp.2d 1233, 1243 (D. Utah 1998). However, "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. §1117(a).

##### a. Corrective Advertising

Dunlop argues that the jury verdict resulted in a "windfall double recovery" for Callaway. (D.I. 446 at 6.) Dunlop contends that the award of $1.1 million for "corrective advertising" and the identical award of $1.1 million for "unjust enrichment" were both based on the $1.1 million Dunlop spent on media advertising of its A10 golf ball. (D.I. 446 at 12.) Specifically, Dunlop argues that the award for "corrective advertising"

amounts to an award of "prospective corrective advertising" damages, for which there is no equitable basis. (*Id.* at 20-21.) Further, Dunlop contends that because Callaway's expert suggested that a fair recovery would be $1.1 million for either corrective advertising or for unjust enrichment, "the allowance of the same measure for both verdict awards amounts to a double recovery." (*Id.* at 24-25.) Callaway responds that the amount awarded for "corrective advertising" was proper because Callaway "was spending huge amounts to promote the distance of the very balls [Dunlop] knew were longer than the A10" and "[Dunlop's] false claims ... made it more difficult and more expensive ... to successfully promote those balls." (D.I. 453 at 15.)

Although corrective advertising damages are usually for costs incurred prior to trial, damages may be awarded to allow an aggrieved party to conduct corrective advertising after trial. *See Big O tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1374-75 (10th Cir. 1977) (awarding prospective corrective advertising damages where the plaintiff was financially incapable of conducting corrective advertising before trial). To grant such damages, however, there must be an economic rationale. *See Zazu Designs v. L'Oréal, S.A.*, 979 f.2d 499, 506, 509 (7th Cir. 1992) ("To justify damages to pay for corrective advertising a plaintiff must show that the confusion caused by the defendant's mark injured the plaintiff and that repair of the old mark ... is the least expensive way to proceed."). Furthermore, an award of money for post-trial corrective advertising must be justifiable as "a surrogate for plaintiff's damages or defendant's profit." *PBM Products, Inc. v. Mead Johnson & Co.*, 174 F. Supp. 2d 417, 420 (E.D. Va. 2001) (internal citations omitted).

At trial, Callaway did not put on evidence of any expenditures it had already incurred in corrective advertising. The only evidence presented by Callaway about its advertising expenses was a comment by Callaway's damages expert, Dr. Cox, that Callaway spent between 17 and 23% of its sales on advertising. (D.I. 424 at 348.) He did not testify, however, as to how much, if any, of that advertising budget had been spent on corrective advertising prior to this trial. (*Id.*) Furthermore, the jury instructions were explicit, as suggested by Callaway, that the "corrective advertising damages" Callaway sought were intended to be used to conduct a "prospective corrective advertising campaign." (D.I. 387 at 22.)

In this case, there is no economic rationale to support an award of "prospective corrective advertising" damages. Dunlop ceased selling its A10 golf balls in August 2002, and Callaway, as of 2004, no longer sold the golf balls at issue in this claim.[1] (D.I. 446 at 17.) Therefore, it makes no sense for Callaway to receive a damages award for "prospective corrective advertising" to correct some possible public misunderstanding about golf balls that have long since been off the market.

Furthermore, at trial, Callaway's own expert, as well as its counsel, suggested corrective advertising damages and unjust enrichment damages were alternative ways to give Callaway due recompense. Specifically, Callaway's counsel told the jury that "we will ask you to award one of those damage measures to Callaway as a result of the false advertising and the harm it caused." (D.I. 423 at 159.) Dr. Cox explained at trial that "one or the other would be adequate compensation for the damage." (D.I. 424 at

---

[1]Callaway does not refute this assertion by Dunlop.

382.) Callaway was in fact awarded $1.1 million in unjust enrichment damages to compensate it for sales lost to Dunlop. *See infra*, VI.A.1.b.iii. To allow Callaway to receive another $1.1 million for prospective corrective advertising would indeed be an unfair doubling of the damage award. *See PBM Products*, 174 F. Supp. 2d at 420 (holding that in order to be awarded corrective prospective advertising a plaintiff must show "that the expenditures are a surrogate for measuring plaintiff's actual damages"). Therefore, I will grant Dunlop's Motion for Judgment as a Matter of Law to the extent that I will vacate the jury's verdict of $1.1 million for corrective advertising damages.

b. Unjust Enrichment

Section 1117(a) permits the recovery of a defendant's profits gained through a violation of the Lanham Act, irrespective of the fact that those profits may be greater than the plaintiffs damages. *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 177-178 (3d Cir. 2005). The purpose of this rule is to remove the incentive to violate the Act where potential profits are greater than the harm that would befall any aggrieved parties. *Id*. To recover a defendant's profit, a showing of "willfulness is an important equitable factor[;]" it is not, however, a prerequisite to an award of profits. *Id*. at 171.

i. Willfulness

In the context of a false advertising claim under the Lanham Act, "'willfulness' and 'bad faith' require a connection between a defendant's awareness of its competitors and its actions at those competitors' expense." *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 966 (D.C. Cir. 1990). "Voluntary, knowing and

intentional misconduct" is considered an indicator of willfulness. *See Castrol*, 169 F. Supp. 2d at 341.

Dunlop asserts that evidence presented at trial was insufficient to establish willfulness and bad faith because (1) the advertising campaign did not constitute a deliberate encroachment on Callaway's rights, (2) all other manufacturers who had their golf balls on the Tour were equally affected by the wrongfulness of any false advertising claim, and (3) a third-party, Taylor Made, was responsible for the 2002 advertising campaign for Dunlop's A10 golf ball. (D.I. 446 at 25-28.) Callaway counters that the legal standard for "willfulness" in a false advertising claim is "plainly met" in this case and that Dunlop's other arguments were "already heard and rejected by the jury at trial." (D.I. 453 at 12, 13 n.8.)

At trial, Dunlop conceded that it tested less than half of the balls used on the PGA tour (D.I. 425 at 534), even though its advertising claimed that the A10 was "the longest ball on tour." (*Id.* at 191.) The results of testing Dunlop carried out in November 2001 and May 2002 showed that the A10 was not the longest ball on tour and that some of Callaway's balls were longer than the A10.[2] (D.I. 424 at 251-67.) Dunlop, nevertheless, proceeded with its advertising campaign, including posting an advertisement on the internet that specifically stated that the A10 was longer than

---

[2]Dunlop contended to the jury that its own testing during that time was flawed and unreliable. (D.I. 424 at 251-67.)

Callaway's Blue and Red golf balls. (D.I. 423 at 222-27.) Thus, the evidence presented in this case reasonably supports the jury's finding of willfulness and bad faith.[3]

Next, Dunlop argues that if the "longest ball on tour" claim was false, the claim affected all premium golf ball sellers who had balls on tour, and therefore it was not a "deliberate encroachment upon Callaway's rights." (D.I. 446 at 25.) Even if true, that argument is irrelevant to the jury's finding of willfulness. There was evidence at trial that Dunlop knew that Callaway's balls were longer than its own golf balls. (D.I. 424 at 251-67.) That Dunlop's claim may have been false with respect to other sellers of premium golf balls does not alter the fact that Dunlop willfully claimed its golf balls were longer than Callaway's golf balls.

Lastly, Dunlop asserts that it cannot have acted willfully because Taylor Made, a third party, had control over advertising issues and made all decisions related to the A10 golf ball media advertising in 2002. (D.I. 446 at 30.) During the time in question, Dunlop and Taylor Made had entered into an agreement in which Taylor Made controlled the distribution of the A10 golf ball and had a duty to promote and advertise that product. (D.I. 425 at 380.) During that time, however, Dunlop continued to spend money advertising the A10 golf ball, and it was that advertising alone that was used in Callaway's damages award calculations. (*Id.*) Moreover, Dunlop is the company which

---

[3]Dunlop assert that "the jury was never instructed as to a legal definition of willful bad faith," and, therefore, I can "review the entire record to discern whether such conduct was proven." (D.I. 454 at 14.) That, however, is not necessary. The jury answered "yes" to the question: "[d]id Dunlop's 'Longest Ball On Tour' advertisement constitute willful wrongdoing or bad faith?" (D.I. 410 at 2.) The plain meaning of "willful" was all that was required to answer that question. Dunlop did not object to the instructions and ought not complain now.

came up with the "longest ball on tour" advertising idea and conducted the testing in support of the campaign. (D.I. 425 at 549.) There was thus ample evidence to support the jury's finding that Dunlop was responsible for falsely claiming that its golf balls were the "longest ball on tour."

ii. Literally False

Dunlop further contends that the jury's finding of literal falsity is not supported by the clear weight of the evidence. (D.I. 446 at 28.) Dunlop concedes that a determination of literal falsity is for the jury, but it suggests that I should make that determination in this case. (*Id.*) In support of its argument, Dunlop says that its 2001 testing should not have "any bearing whatsoever" on whether its advertising campaign in 2002 was literally false. (*Id.* at 29.) Dunlop further argues that some test data should be ignored because the tests were invalid. (D.I. 424 at 262.) According to Dunlop, low statistical significance due to small sample size invalidated the November 2001 tests. (*Id.* at 251-52.) Moreover, Dunlop contends, the balls used in its tests were plagued by "intermittent paint problems," which rendered the tests invalid. (*Id.* at 537-40, 554-55.)

"To prove that an advertising claim is literally false, a plaintiff must do more than show that the tests supporting the challenged claim are unpersuasive." *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991). "A plaintiff may meet this burden either by attacking the validity of the defendant's tests directly or by showing that the defendant's tests are contradicted or unsupported by other scientific tests." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Callaway may rely on data generated by Dunlop "as scientific proof that the challenged

advertisement was false." *McNeil-P.C.C., Inc.*, 938 F.2d at 1549; *see also Tambrands, Inc. v. Warner-Lambert Co.*, 673 F. Supp. 1190, 1194 (S.D.N.Y. 1987) (deeming false an advertised claim where defendant's own tests refute the claim).

As discussed above, the evidence presented to the jury supported the conclusion that Dunlop knew, based on its own test results, that Callaway's balls were in fact longer and that, therefore, its claim to be "the longest ball on tour" was literally false. It was for the jury to weigh other factors, such as Dunlop's alleged paint problems, statistical validity questions, and the assertion that other manufacturers purportedly use similar claims. The evidence presented was sufficient for a reasonable jury to find Dunlop's claim was literally false.

iii. Considerations of Equity

Dunlop also contends that the award for unjust enrichment is inequitable. (D.I. 424 at 8-12.) Dunlop specifically argues that an award of defendant's profits requires an actual showing of damages. (*Id.* at 9 (citing *Vuitton Et Fils, S. A. v. Crown Handbags*, 492 F. Supp. 1071, 1077 (S.D.N.Y. 1979). Dunlop's implication is that Callaway is not entitled to the full amount of the $1.1 million in unjust enrichment damages because any extra profits Dunlop earned as a result of the "longest ball on tour" claim was at the expense of all the companies that sold premium golf balls on tour. Consequently, Dunlop would have me lower the award to Callaway. (*Id.* at 8-9.)

The Lanham Act provides that "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to

the circumstances of the case." 15 U.S.C. § 1117(a). In the instant case, Dr. Cox testified that Dunlop's profits from the sale of A10 golf ball resulting from the "longest ball on tour" claim was $1.4 million. (D.I. 424 at 366.) Further, there was evidence that Callaway's balls were longer than Dunlop's A10 ball. (D.I. 424 at 251-67.) The jury could have found such evidence persuasive and concluded that, if Dunlop had not falsely claimed that its golf balls were longer, most of those sales would have gone to Callaway. Thus, an award of $1.1 million is within the bounds of equity.

Dunlop further argues that a defendant's profits should not be given to a plaintiff where an injunction will satisfy the equities of a case. (*Id.* at 10 (citing *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947).) Dunlop reasons that, because Callaway never asked for an injunction, Callaway should be denied all equitable remedies including unjust enrichment damages. (*See id.* at 11.)

Even the case law Dunlop cites does not support this argument. Dunlop relies on *Caesars World, Inc. v. Venus Lounge, Inc.*, which states that "[i]f the record in the district court contains no evidence of actual damage or actual profit in dollars and cents no monetary award may be made under § 35 of the Lanham Act and the trademark owner must be content with injunctive relief." (D.I. 446 at 10 (citing 520 F.2d 269, 274 (3d Cir. 1975)).) This case law does not suggest that failure to get an injunction prohibits unjust enrichment damages. As *Caesars World* requires, Callaway presented an estimate of Dunlop's profits and unjust enrichment. (*See* D.I. 424 at 353-74.) Consequently, an award of unjust enrichment damages is appropriate.

2. Trade Secret Counterclaim

a. Requirement that Dunlop Prove "Use"

I ruled before trial that, to prove misappropriation of a trade secret, one must prove that the wrong-doer made "use" of the trade secret at issue. Dunlop contends that my ruling "constituted legal error and resulted in an inappropriate jury verdict, for which [Dunlop] is entitled to a new trial." (D.I. 446 at 33.) Dunlop also argues that the jury's finding that Callaway did not use any Dunlop trade secret is against the great weight of the evidence presented at trial. (*Id.* at 35.)

As to whether a misappropriation claim requires a showing of "use" of the acquired information, the issue has been addressed fully in this case. (*See*, D.I. 359 at 14-15; 369 at 3-4.) I have stated my understanding of the law and need not state it again.

As to the evidentiary support for the jury's finding of no "use," there was ample evidence showing that Callaway's golf ball cores were different than the core technology Callaway was alleged to have misappropriated from Dunlop. (D.I. 429 1688-92, 1727-29.) The evidence showed that ingredients found in both Dunlop's and Callaway's ball cores are found in all golf ball cores. (*Id.*) Callaway also showed that it substantially invested in its research and development operations; it hired over forty people, many of whom had prior golf technology experience, to develop its first golf ball; it tested over 4000 prototype cores and over 1200 finished balls; it conducted experimental work that would not have been necessary had Dunlop trade secrets been consulted. (*Id.* at 1612-14, 35-37, 1740-41, 47-48, 1968.) Finally there was evidence

that, in spite of the resources it invested, Callaway still took substantially more time than other companies to develop its first golf ball. (*Id.* at 1743-44.) Based on the evidence presented, the jury's finding of lack of "use" was not against the clear weight of the evidence. Consequently, a new trial will not be granted on this issue.

                b.      Polyurethane Technology

Dunlop argues that I incorrectly granted Callaway's motion for partial summary judgment on Dunlop's polyurethane counterclaim.[4] (*Id.* at 32.) Specifically, Dunlop argues that by granting that motion, as it pertained to polyurethane technology, I prevented Dunlop from presenting evidence of "use" of any misappropriated trade secrets. (*Id.*) Dunlop also argues that this excluded evidence is relevant to other aspects of its trade secret counterclaim. (*Id.*)

Dunlop already sought reconsideration of the May 13, 2004 Memorandum Opinion and Order (D.I. 358, 359) in which I granted Callaway's motion for partial summary judgment. (D.I. 364.) The grounds for that decision are unchanged. (*See* D.I. 369 at 7-8.) Dunlop does not point to any proffer of evidence it made at trail that was rejected on the basis of that earlier ruling. As Dunlop itself notes, my "rulings on evidentiary issues were consistent with the pre-trial summary judgment ruling, and thus

---

[4]Dunlop's original counterclaim for misappropriation of trade secrets contained two parts. The first was for misappropriation by former Dunlop employee Pijush Dewanjee ("Dewanjee") of trade secrets related to polyurethane golf ball covers. (D.I. 359.) The second was for misappropriation of trade secrets found in a set of documents that former Dunlop employee Henry Felipe allegedly took with him to Callaway, including Dunlop's "Golf Ball Specifications and Process Manual," after he lost his job at Dunlop. (D.I. 293 at ¶¶ 26, 39-49; D.I. 338 at 17-18.) In the May 13, 2004 Opinion in this case, I held that polyurethane technologies known to Dewanjee from his work at Dunlop were not Dunlop trade secrets, and, consequently, Dewanjee could not have misappropriated them from Dunlop. (D.I. 359.)

the correctness of those rulings must await appellate review of the correctness of the pre-trial rulings." (D.I. 454 at 19.)

3. Negligent Hiring Counterclaim

Dunlop contends that I erred in granting at trial Callaway's Rule 50 motion to dismiss Dunlop's negligence counterclaim. (D.I. 446 at 35.) Dunlop argues that its claim was not preempted by the California Uniform Trade Secrets Act, California Civil Code § 3426.1 *et seq*. ("CUSTA"). (*Id.*) However, as Dunlop itself points out, the issue of preemption has been addressed extensively in "pre-trial and trial pleadings and oral argument." (*Id.,* record citations omitted.) I therefore will not repeat the earlier discussions here. Suffice it to say that, if the technology in dispute does constitute a trade secret, as the jury found it did, the common law negligence claim is preempted. (*See* D.I. 362 at 7, Memorandum Opinion, *see also* D.I. 369 at 8, Memorandum Order (denying reconsideration).) Furthermore, Dunlop conceded at trial that there is no evidentiary basis to support a negligent hiring claim. (D.I. 428 1560-61.) Therefore, I did not err dismissing the negligence claim, and a new trial on this ground is denied.

B. Dunlop's Motion for Attorneys' Fees

Dunlop's Motion for Attorneys' Fees and Costs (D.I. 438) arises out of a patent infringement claim filed by Callaway, alleging that Dunlop had infringed claims 14 and 15 of U.S. Patent No. 6,213,898 B1 (the "'898 patent"), assigned to Callaway. (D.I. 443 at 1.) Before trial, Callaway voluntarily dismissed the patent infringement claim and gave Dunlop a covenant not to sue. (*Id.*) In turn, Dunlop agreed to dismiss without

prejudice its counterclaim for a declaration that the '898 patent is invalid and unenforceable. (*Id.*)

A district court may award attorneys' fees to the "prevailing party" in a patent infringement action. 35 U.S.C. § 285 (the "Patent Act"). To receive attorneys' fees, however, that party must demonstrate that the case is exceptional and warrants such an award. *E.g., Beckman Instr., Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989). Even in an exceptional case, the court is not bound to award fees. *See S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198 at 201. There are multiple factors that affect a decision on whether to award attorneys' fees, "such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burden of litigation as between winner and loser." *Id.* The issues here are thus whether Dunlop is the "prevailing party" and whether the case is "exceptional."

        1.    Prevailing Party

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court set forth standards which are "generally applicable to all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Id.* at 433 n.7. Clarifying what constitutes a "prevailing party," the Court held that it does not "include[ ] a party that has failed to secure a judgement on the merits or a court-ordered consent decree ... ." *Buckhannon Bd. and Care Home v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 600 (2001) (holding an award of attorneys' fees under Americans with Disabilities Act and Fair Housing Act requires a party to secure a judgment on the

merits). A defendant, who has obtained from a claimant a voluntary dismissal with prejudice can be classified as a "prevailing party." *See Bioxy, Inc. v. Birko Corp.*, 935 F.Supp. 737, 744 (E.D.N.C. 1996) ("The defendants, having obtained from plaintiff a voluntary dismissal with prejudice are considered prevailing parties."); *Western Food Equip. Co. v. Foss America, Inc.* 205 U.S.P.Q 835, 838 (D. Or. 1980) ("The fact the [patent infringement] claim was not tried does not automatically render attorneys' fees inapplicable."). As to the patent infringement claim, I think it plain that Dunlop is the "prevailing party," for the purpose of considering an application for attorneys' fees.

2. Exceptional Case

"Exceptional cases have generally fallen into three broad categories: (1) willful and deliberate infringement; (2) misconduct in prosecuting the patent application; and (3) litigation in bad faith." *A1 Computer Servs. v. Standard Parking Sys.*, 1998 U.S. Dist. LEXIS 14274 at *9 (S.D.N.Y. Sept. 9, 1998) (internal citations omitted). With respect to litigation in bad faith, "tactics rising to the level of 'exceptional' ... have included: (1) a delay in instituting the suit; (2) misrepresentation or nondisclosure of evidence; (3) use of dilatory tactics; and (4) maintenance of an untenable position." *Id. at* *13 (internal citations omitted). "Courts, however, have generally been reluctant to find exceptional circumstances where a plaintiff has decided to abandon a claim in the early stages of a case and seek a voluntary dismissal." *Id. at* *13-14 (internal citations omitted). Furthermore, to award attorneys' fees under U.S.C. § 285 requires "the exceptional nature of the case ... be established by clear and convincing evidence." *Id.* at *10.

Dunlop argues that Callaway's claim for patent infringement of the '898 patent was frivolous and that the litigation was initiated and maintained in bad faith. (D.I. 443 at 1.) Dunlop accuses Callaway of protracting "the infringement litigation for two years, knowing full well that its claim lacked sufficient legal or factual support and the patent claims allegedly infringed were invalid." (*Id.*) To support its position, Dunlop asserts that Callaway knew, prior to commencement of the suit, that some data used in its infringement analysis was flawed, that Callaway continued to rely on the false data after it hired a second expert, that Callaway forced Dunlop to hire expensive experts to address complex issues of physics, chemistry, and damages, and that Callaway dismissed the claim only to preserve its '898 patent. (*Id.* at 2.)

Callaway maintains that it brought the infringement suit in good faith, believing that Dunlop's A10 golf ball infringed its '898 patent. (D.I. 449 at 1.) In support of its argument, Callaway concedes that it erred in its original analysis of Dunlop's golf balls but maintains that it immediately corrected the error by hiring a second, independent expert who re-tested the balls. (*Id.* at 21.) Furthermore, Callaway asserts that there were several other reasons, aside from the quality of its infringement claim, why it voluntarily dismissed that claim. (*Id.* at 22-23.) Those reasons include a belief that it was not in Callaway's best interest to pursue a claim after various testing problems had occurred, that the litigation would not be worth the expense it would likely entail, and that it needed to focus on other complex litigation relating to trade secrets and false advertising. (*Id.* at 22-23.)

Dunlop has failed to show by "clear and convincing evidence" that Callaway brought this suit in bad faith. To the contrary, voluntary dismissal is generally deemed "an indication of good faith." *Kastar v. K Mart Enterprises*, 190 U.S.P.Q. 550, at *555 (E.D.N.Y. 1976). "Even if plaintiffs' pre-suit investigation was unreasonable, an unreasonable investigation alone does not demonstrate that the ensuing litigation was vexatious, unjustified, or brought in bad faith." *Hoffman La-Roche, Inc. v. Invamed, Inc.*, 213 F.3d 1359, 1363 (Fed. Cir. 2000) (citing and affirming *Hoffman La-Roche, Inc. v. Genpharm, Inc.*, 50 F. Supp. 2d 367, 373 (D.N.J. 1999)). Furthermore, nothing in the record leads me to conclude that Callaway's tactics were vexatious or dilatory. The fact that Dunlop incurred expense in hiring experts to defend against Callaway's patent claim is insufficient to support a finding that this case is exceptional. Thus, because the case is not exceptional in this regard, I must deny an award of attorneys' fees to Dunlop.

C. Callaway's Motion for Attorneys' Fees and Prejudgment Interest

1. Attorneys' Fees

The Lanham Act also authorizes an award of attorneys' fees to the "prevailing party," and also limits such an award to "exceptional" cases. 15 U.S.C. § 1117(a). The Third Circuit has noted that the "interpretation of the of the fee provision of the Lanham Act is buttressed by the interpretation of the Court of Appeals for the Federal Circuit of an identical fee provision in the Patent Act., 35 U.S.C. § 285." *Securacomm Consulting, Inc. v. Serucacom Incorporated*, 224 F.3d 273, 281 (3d Cir. 2000); *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 65 (5 th Cir. 1992). To find a case

exceptional, for the purposes of the Lanham Act or the Patent Act, requires clear and convincing evidence. *CJC Holdings*, 979 F.2d at 65. Further, a finding of exceptionality requires "culpable conduct ... such as bad faith, fraud, malice, or knowing infringement." *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47 (3d Cir. 1991) (internal citations omitted).

Callaway argues that it is entitled to attorneys' fees because this case is exceptional based on the jury's finding by a preponderance of the evidence that Dunlop acted willfully.[5] (D.I. 440 at 1.) Alternatively, Callaway argues that if the jury's finding of willfulness, because it was found by a preponderance of the evidence rather than clear and convincing evidence, is not sufficient to support a finding that the case is exceptional, then there is sufficient evidence in the record for me to find the case to be exceptional under a clear and convincing evidence standard. (D.I. 451 at 5-6.)

Dunlop argues that this case is not exceptional because Callaway failed to show by clear and convincing evidence that the conduct complained of was willful or deliberate. (D.I. 448 at 9.) Dunlop also argues that, if it is not awarded fees for prevailing on the patent claim, then I should find that neither party is entitled to attorneys' fees because the case ended in a "mixed result." (*Id.* at 4-5.) Specifically, it

---

[5]The jury was instructed to consider the Lanham Act claim under a "preponderance of the evidence" standard. (D.I. 406 at 17.) The jury was further instructed to consider damages under the same standard. (*Id.* at 20.) Therefore, although the jury instructions do not specifically state that a finding of willfulness is governed by a "preponderance of the evidence" standard, with respect to Callaway's Lanham Act claim, that was the only standard as to which the jury was instructed. Consequently, it is clear that the "preponderance of the evidence" standard was employed by the jury to find willful wrongdoing. (*Id.* at 21.)

argues that both parties have requested fees under fee shifting statutes and have prevailed on their claims under the respective statutes. (D.I. 448 at 4-5.)

In the instant case, the jury found by a preponderance of the evidence that Dunlop acted willfully and in bad faith. They did not answer, because they were not asked, whether there was clear and convincing evidence that Dunlop acted willfully and in bad faith. Even if I am permitted to make such a finding now, I decline to answer that question in the affirmative. Dunlop freely admits that its advertising was the result of "an ill-substantiated marketing campaign." (D.I. 448 at 9.) There is, however, evidence supporting the proposition that Dunlop did not know that "longest ball on tour" claim was literally false. (D.I. 425 at 537-40, 554-55 (questioning test result because of intermittent paint problems); D.I. 425 at 252-56 (questioning statistical validity of test results); D.I. 446 at 29 n.14 (suggesting that the longest ball in certain tests was an A10 by Dunlop).) In short, the evidence of willfulness and bad faith, taken as a whole, falls below the level of being clear and convincing. This case is, therefore, not exceptional. Consequently, I hold that the case does not warrant the awarding of attorneys' fees.[6]

2. Prejudgment Interest

Callaway also requests an award of prejudgment interest. (D.I. 440 at 9.) However, while "[s]ection 1117(a) [of the Lanham Act] does not provide for prejudgment interest, such an award is within the discretion of the trial court and is normally reserved

---

[6]It is worth noting that Callaway's requested attorneys' fees, aside from being unwarranted in this case, also appear to improperly include time associated solely with its failed patent claim. (*See* D.I. 442, Ex. A, "review and analysis of Japanese prior art search results," "review office action responses regarding Aerodynamics pending patents.")

for 'exceptional cases.'" *American Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1064. (2d Cir. 1990). Because this case is not exceptional, Callaway's motion for prejudgment interest is also denied.

## V. CONCLUSION

For the reasons stated, I will GRANT Dunlop's Motion for Judgment as a Matter of Law to the extent that I will vacate the $1.1 million award for corrective advertising, and I will DENY that motion in all other respects. (D.I. 434.) I will also DENY Dunlop's Motion for Attorney Fees and Costs (D.I. 438) and DENY Callaway's Motion for Attorney Fees and Costs (D.I. 437). An appropriate order will follow.